**EXHIBIT B**

**RECEIVED OCT 2 5 1999**

*OK 9915*

## POINTER/CAULKER/CLEANER
## BRICKLAYERS AND ALLIED CRAFTWORKERS
## LOCAL #5 OF OKLAHOMA

This Agreement is entered into this _____1st__ day of _____June_____,1999__, by and between _____ (hereinafter referred to as the Employer), and the International Union Of Bricklayers and Allied Craftworkers Local No.5 OK, of (hereinafter referred to as the Union).

## ARTICLE I
## DURATION - TERMINATION - AMENDMENT

This Agreement shall be effective commencing _____June 1_, 1999__, and shall continue in full force to and including _____May 31__, 2002__, and shall be automatically continued yearly thereafter unless written notice of decision to negotiate a new Agreement. In whole or in part, is given in writing by either party to the other not later than sixty (60) days nor more than one hundred eighty (180) days prior to the expiration date or any anniversary date thereafter. It is also recommended by both parties to schedule Labor/Management meetings one year prior to the expiration date of this Agreement. If the parties fail to reach an agreement in such negotiations, the issues in dispute shall be submitted to the International Masonry Institute's Dispute Settlement Plan for such steps as are deemed appropriate in accordance with the procedures of the Plan. The parties may at any time mutually agree to change or amend any part of this Agreement and such changes or modifications shall not affect the continuing nature of this Agreement.

## ARTICLE II
## SCOPE OF WORK

A. This Agreement shall cover new construction, maintenance, repair and renovation with all counties or portions thereof in the State of Oklahoma.

B. This Agreement shall cover all Brick Masonry, Stone Masonry, Artificial Masonry, Pointing, Cleaning, and Caulking work falling within the jurisdiction of the Union, as defined in Branches of the Trade, Code 1 of the Constitution, Rules of Order and Codes of the International Union of Bricklayers and Allied Craftworkers which is incorporated herein by reference.

In addition, all other assignments mutually agreed upon between the Employer and the Union on any other building products or systems related to the scope and type of work covered by this Agreement which may be developed in the future that are determined by these parties to fall within the work jurisdiction of this Agreement.

In the event of territorial jurisdiction or work assignment dispute with any other BAC Local Union, the matter shall be referred to the International Union for binding resolution.

1

OK9915

## ARTICLE III
## MOST FAVORED NATIONS CLAUSE

**A.** The union agrees that if it should enter into an agreement which provides for terms or conditions of employment which are more favorable that those contained in this Agreement for specific projects, particular segments of the masonry market or certain geographic areas, those same terms and conditions of employment will be made available to the Employer on the specified projects, particular segments of the masonry market or in those geographic areas covered. The only exception to this provision is: Those initial Agreements that are signed with newly organized employers to provide a bridge between those rates which are initially established and those which prevail for signatory contractors in the masonry market in which the newly organized contractor is going to operate.

**B.** In the event that any question arises as to the meaning and application of this provision, either party may file with the other a written complaint. Such complaint will be initiated at Paragraph C of the grievance procedure set forth in Article XX of this Agreement (referred to Joint Arbitration Board), and shall be processed in accordance with the procedure for the handling of grievances and the final and binding arbitration of disputes.

## ARTICLE IV
## UNION RECOGNITION, UNION SECURITY, ACCESS

**A.** The Employer hereby recognizes and acknowledges that the Union is the exclusive representative of all its employees in the classifications of work falling within the jurisdiction of the Union, as defined in Article II of this Agreement, and in the Constitution, Rules of Order and Codes of the International Union of Bricklayers and Allied Craftworkers, for the purpose of Collective Bargaining as provided for in the Labor Management Relations Act of 1947 as amended.

Inasmuch as the Union has submitted proof and the Employer is satisfied that the Union represents a majority of its employees in the bargaining unit described herein, the Employer recognizes the Union as the exclusive collective bargaining agent for all employees within that bargaining unit, on all present and future jobsite within the jurisdiction of the Union, unless and until such time as the Union loses its status as the employees' exclusive representative as a result of an NLRB election requested by the employees. The Employer agrees that it will not request an NLRB election.

**B.** No later than eight (8) days following the effective date of this Agreement, all present employees must, as a condition of continued employment, be or become members of the Union; all employees hired after the effective date of this Agreement shall be or become and remain members of the Union no later than eight (8) days following the first day of their Employment in accordance with the provisions of Section 8 of the National Labor Relations Act, as amended. failure of any employee to comply with provisions of this subsection shall, upon request of the Union, result in termination of such employee, provided that the Union has given the employee four (4) days notice that his obligation to make payment has not been met and that his delinquency renders him liable to termination under this section. The Employer shall not be obligated to dismiss an employee for non-membership in the Union: (a) If he has reasonable grounds for believing that such membership was not available on the

2

OK9915

same terms and conditions generally applicable to other members; or (b) If he has reasonable grounds for believing that such membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and initiation fees uniformly required as a condition of acquiring or retaining membership.

C.    International Union Representatives and the President/Financial Secretary and Field Representatives of the Union shall have access to the Employer's jobsites at reasonable times in compliance with any special rules and regulations adopted by the owner to ensure that the provisions of this Agreement are observed, provided however, that such representatives shall not unduly interfere with the job progress.

## ARTICLE V
## HIRING PREFERENCE

Subject to the policies regarding traveling members established from time to time by the International Union of Bricklayers and Allied Craftworkers, the Employer, when engaged in any construction work within the geographic area covered by this Agreement, shall, in hiring employees covered by this Agreement, give preference to persons residing or normally employed in the geographic area covered by this Agreement.

## ARTICLE VI
## STEWARDS

The Employer shall work a steward appointed by the President/Financial Secretary or Field Representative of the Union on all jobs or the steward may be elected by the members of this Union who are working on said job. The steward shall be a working employee and shall when appropriate be granted reasonable time to conduct Union business.

## ARTICLE VII
## APPRENTICES

In order to train sufficient skilled mechanics for the industry, the necessity for employment of apprentices and/or apprentice improvers is recognized and encouraged by the parties to this Agreement. It is agreed that the Employer shall abide by the National apprenticeship Standards developed for masonry craft training and the State of Oklahoma Trowel Trades Apprenticeship standards.

RECEIVED OCT 2 - 1999

RECEIVED OCT 2 5 1999

3

OK9915

# ARTICLE VIII
## TRAVELING CONTRACTORS

A.   When the Employer has any work specified in Article II of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by an Agreement with another affiliate of the International Union of Bricklayers and Allied Craftworkers, the Employer agrees to abide by the full terms and conditions of this Agreement in effect in the jobsite area except as specified in paragraph D below. Employees covered by this Agreement who are sent to projects outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Article IX of this Agreement but in no case less than the established minimum wage scale of the Local Agreement covering the territory in which such work is being performed plus all contributions specified in the jobsite Local Agreement.   The Employer shall in all other matters be governed by the provisions established in the jobsite Local Agreement. If employees are sent to work on a project in an area where there is no Local Agreement covering the work specified in Article II of this Agreement, the full terms and conditions of this Agreement shall apply.

B. When the Employer has any work covered by this Article, the Employer shall notify BAC Local 5 Oklahoma and the Local Union having jobsite jurisdiction within forty-eight (48) hours of being awarded a contract for a project.  Further the Employer shall contact the jobsite Local Union and schedule a pre-job meeting, or, if appropriate, a telephone conference to be held at least twenty days (20) prior to commencing work to discuss labor requirements for the project.

C.  If the Employer has difficulty contacting the jobsite Local Union, or, if the jobsite Local Union is unable to refer the skilled employees required for the project, the Employer shall send a FAX outlining the labor required for the project to the office of BAC Local 5 Oklahoma at least twenty days (20) prior to beginning any work on the project.

D.  The parties agree that if the jobsite Local Union or BAC 5 Oklahoma is unable within seventy-two (72) hours of a request, excluding weekends and holidays, to refer the skilled employees required for the project, this Article is not applicabale to that project, except, when employees are sent by the Union from any area or are sent by the Employer (from among employees covered by this Agreement for work on projects outside of the area covered by this Agreement, the full terms and conditions of this Agreement shall apply to said employees only.

4

OK9915

## OKLAHOMA STATEWIDE
## POINTER - CAULKER - CLEANER HOURLY RATES
## EFFECTIVE JUNE 1, 1999 THRU MAY 31, 2002

### EFFECTIVE JUNE 1, 1999

| | (TAXABLE DEDUCTIONS) | | | (NON-TAXABLE) FRINGE BENEFITS | | | |
|---|---|---|---|---|---|---|---|
| BASE WAGES | VAC | DUES CHECKOFF IU | LOCAL | PENSION | H&W | IMI | TOTAL PACKAGE |
| 17.06 | 1.00 | .21 | .32 | 1.50 | 1.95 | .24 | $20.75 |

### EFFECTIVE DECEMBER 1, 1999

| | (TAXABLE DEDUCTIONS) | | | (NON-TAXABLE) FRINGE BENEFITS | | | |
|---|---|---|---|---|---|---|---|
| BASE WAGES | VAC | DUES CHECKOFF IU | LOCAL | PENSION | H&W | IMI | TOTAL PACKAGE |
| 17.31 | 1.00 | .21 | .32 | 1.50 | 1.95 | .24 | $21.00 |

### EFFECTIVE JUNE 1, 2000

| | (TAXABLE DEDUCTIONS) | | | (NON-TAXABLE) FRINGE BENEFITS | | | |
|---|---|---|---|---|---|---|---|
| BASE WAGES | VAC | DUES CHECKOFF IU | LOCAL | PENSION | H&W | IMI | TOTAL PACKAGE |
| 17.81 | 1.00 | .22 | .33 | 1.50 | 1.95 | .24 | $21.50 |

### EFFECTIVE JUNE 1, 2001

| | (TAXABLE DEDUCTIONS) | | | (NON-TAXABLE FRINGE BENEFITS | | | |
|---|---|---|---|---|---|---|---|
| BASE WAGES | VAC | DUES CHECKOFF IU | LOCAL | PENSION | H&W | IMI | TOTAL PACKAGE |
| WAGE OPENER | 1.00 | .22 | .33 | 1.50 | 1.95 | .24 | WAGE OPENER |

RECEIVED OCT 2 5 1999

5

OK9915

A. This Agreement shall encompass all Counties in the State of Oklahoma.

B. The Union shall have the option of allocating a portion of all of the increases in wage rates for the periods beginning (first anniversary) and (second anniversary) among the various benefit funds specified in Article X.

C. The Employer shall deduct from the wages of each employee who has signed a check-off authorization conforming to federal law, and transmit monthly to the Union (or to any agency designated by said Union for the collection of such money), the sum for each hour paid which the Union has specified, or specifies from time to time and so advises the Employer in writing, as the portion of each employee's Union dues to said Union, to its International Union, or to any other affiliate of the International Union, subject to checkoff. The sums transmitted shall be accompanied by a statement, in a form specified by the Union, reporting the name of each person whose dues are being paid and the number of hours each employee has been paid.

## ARTICLE X
## JOINTLY TRUSTED FUNDS

**Section I.** In addition to the wages and other payments herein provided for, the Employer agrees to pay the specified contributions to the following designated funds.

**A.** Bricklayers and Trowel Trades International Pension Fund.

1. The contribution to the Bricklayers and Trowel Trades International Pension fund (IPF) shall be a total of (Refer to Article IX Wages) for each hour or portion thereof, for which a covered employee receives pay.

2. The payments required above shall be made to the Bricklayers and Trowel Trades International Pension Fund, which was established under an Agreement and Declaration of Trust, dated 1 July 1972.

**B.** Bricklayers International Union No. 5 of Oklahoma Health & Welfare Fund

1. The contribution to the Bricklayers International Union Local 5 of Oklahoma Health and Welfare Plan (formerly Bricklayers International Union No. 1 of Oklahoma Health and Welfare Plan), shall be a total of (Refer to Article IX Wages) for each hour or portion thereof, for which a covered employee receives pay.

6

OK9915

2.    The payments required above shall be made to the Bricklayers International Union Local 5 of Oklahoma Health and Welfare Plan (formerly Bricklayers International Union No. 1 of Oklahoma Health and Welfare Plan), which was established under and Agreement and Declaration of Trust, dated August 5, 1971.

## Vacation Fund

**D.**    Bricklayers International Union No. 5 of Oklahoma Vacation Trust Fund

1.    The contribution to the Bricklayers International Union No. 5 of Oklahoma Vacation Trust Fund (formerly Bricklayers International Union No. 1 of Oklahoma Vacation Trust Fund), shall be a total of (Refer to Article IX, Wages) for each hour or portion thereof, for which a covered employee receives pay.

2.    The Employer agrees that this Vacation Fund contribution shall be deducted from the covered employees' wages after all tax deductions have been made.

3.    The payments required above shall be made to the Bricklayers International Union No. 5 of Oklahoma Vacation Trust Fund (formerly Bricklayers International Union No. 1 of Oklahoma Vacation Trust Fund), which was established under and Agreement and Declaration of Trust, dated July 18, 1985.

     **NOTE:**   The above referenced Local Trust documents as currently written specify composition of committees and full fiducial responsibility of trustees to each Local Trust fund with the exception of the name change of all the aforementioned local Trust funds which shall be "Bricklayers International Union No. 5 of Oklahoma" shall remain in tact and unaltered unless done by Trustees to said funds.

**E.**    **Bricklayers & Allied Craftworkers Mobility Fund**

1.    The contribution to the Bricklayers & Allied Craftworkers Mobility Fund shall be a total of _____ cents for each hour or portion thereof, for which a covered employee receives pay.

2.    The payments required above shall be made to the Bricklayers & Allied Craftworkers Mobility Fund, which has established under an Agreement and Declaration of Trust dated _____.

OK9915

**F.    International Masonry Institute**

1.   The masonry industry in the United States and Canada has great and definable needs in the fields of apprenticeship and training, advertising and promotion, research and development, and labor/management relations which must be met if the industry is to grow and prosper.  The parties to this agreement believe that the International Masonry Institute is the most effective and efficient instrument for meeting these needs because it offers the greatest possibility of integrating activities in these program areas in an effective manner and coordinating them through a single regional/international system.

2.   In order to properly finance IMI programs, the ultimate objective is to provide, through collective bargaining, contributions equal to three percent of total hourly wage and benefits package; however, this figure is a goal that can only be reached in stages over a period of time.

3.  As contributions from this geographical area increase, IMI will be able to devote a portion of those monies to advertising and promotion, research and development, apprenticeship and training and labor/management relations programs directed specifically to this area.

4.   In this Agreement, the parties intend to take a first step toward the overall objective by establishing a realistic level of support for IMI.  With these principles in mind, the parties agree as follows:

(a)  Effective June 1, 1999, the contribution to the International Masonry Institute shall be a total of (Refer to Article IX Wage) for each hour, or portion thereof, for which a covered employee receives pay.

(b)  Effective June 1, 2000, the contribution to the International Masonry Institute shall be a total of (Refer to Article IX Wage) for each hour, or portion thereof, for which a covered employee receives pay.

(c)  Effective June 1, 2001, the contribution to the International Masonry Institute shall be a total of (Refer to Article IX Wage) for each hour, or portion thereof, for which a covered employee receives pay.

**Section 2.**  The Employer hereby agrees to be bound by and to the above stated Agreements and Declarations of Trusts, as though he had actually signed the individual documents and further agrees to be bound by all actions taken by the Trustees of these funds pursuant to said Agreements and Declarations of Trusts.

**Section 3.**  The Employer hereby irrevocably designates as its representative on the above stated Boards of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.

8

OK99 15

**Section 4.** For the purpose of this Article, each hour paid for, including hours attributable to show-up time, and all other hours for which pay is received by the employee in accordance with this Agreement, shall be counted as hours for which contributions are payable to each fund designated in Section 1 of this Article.

**Section 5.** Contributions shall be paid on behalf of all covered employees starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, journeymen, apprentices.

**Section 6.** All contributions shall be made at such time and in such a manner as the Trustees require; and the Trustees shall have the authority to have an Independent Certified Public Accountant audit the time books, payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the funds designated in Section of this Article. Any employer found, as a result of an audit ordered by the Trustees of one of the fringe benefit funds, to have been substantially inaccurate in reporting shall be charged in full costs of such audit.

**Section 7.** If the Employer fails to make any contribution specified in this Article, within twenty (20) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary, including the withdrawal of manpower, to secure compliance with this Agreement, any other provisions hereof to the contrary notwithstanding, and the Employer shall be liable for all costs for collection of payments due together with attorney's fees and such liquidated damages as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no strike" clause which may be provided for or set forth elsewhere in this Agreement.

**G.     Oklahoma State Trowel Trades Joint Apprenticeship Fund**

1. The contribution to the Oklahoma State Trowel Trades Joint Apprenticeship Fund shall be a total of (Refer to Article IX Wage), for each hour or portion thereof, for which a covered employee receives pay.

2. The payments required above shall be made to the Oklahoma State Trowel Trades Joint Apprenticeship Fund, which will be established under an Agreement and Declaration of Trust, dated _____.

**H. Bonding**

Employers party to this Contract, agree to furnish a performance and payment bond (or evidence that the General Contractor has such payment and performance bond with the owner) with a duly qualified bonding company to secure payment of all fringe benefits due and owing under the provisions of this Agreement. The bond shall be in approved form and shall be in the sum of $10,000.00. The bond shall also provide that the bonding company will have thirty (30) days written notice before cancellation of said bond to ABPA and held in the Administrative Fund Office.

9

OKOA15

Employers having established a timely payment record will not be required to post a bond until such time as they become delinquent. Employees will not be permitted to work for any employer who had not furnished such bond or is delinquent in the payment of contributions required to be made by the empoyers under this Agreement.

Performance and payment bonds shall be made payable to American Benefit Plan Administrataors.

## ARTICLE XI
### HOURS OF WORK, PAY PERIOD, OVERTIME, SHIFTS, AND HOLIDAYS

**Section 1.** The standard work day shall consist of eight (8) hours of work between the hours of 8:00 a.m. and 4:30 p.m., with a 30 minute unpaid lunch hour occurring in the middle of the shift. The standard work week shall consist of five standard work days commencing on Monday and ending on Friday, inclusive. The normal starting and quitting times may be changed by mutual consent of the Employer and the Union.

**Section 2.** All employees working under this Agreement shall be paid in cash or by check weekly before quitting time within five (5) days after the closing of the pay week. An employee being laid off shall be given his final paycheck in full for all hours of employment at the end of his/her work shift.

**Section 3.** All time worked before and after the established eight (8) hour work day, Monday through Friday, and all time worked on Saturdays, shall be paid at the rate of 1 1/2 times the hourly base wage rate in effect. All time worked on Sundays and on the holidays specified in Section 5 of this Article shall be paid for at the rate of double the hourly base wage rate in effect.

**Section 4.** The parties to this Agreement recognize the desirability and in some cases absolute necessity of coordinating the shifts to be worked with the other trades involved on the project and the customer's work schedule. The schedule of approved shifts can be adopted by mutual consent of the Employer and the President/Financial Secretary of the jobsite Local Union as per Section 8 of Article XI.

**Section 5.** Holiday work performed on Sunday and the following holidays; **Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Christmas, and New Years Day** shall be paid at the rate of **Double Time.** If the holiday falls on Saturday, then Friday will be observed as the holiday, and if the holiday falls on Sunday, then the following Monday will be observed as the holiday. The Business Manager can issue temporary permission to work overtime until the next meeting of the Union.

10

OK99i5

**Section 6. Make-Up Days:** In the event employees working under this Agreement lost eight (8) or more hours of work during the work week due to inclement weather, the Employer may, at his option, schedule a make-up day on Saturday (or Friday if the project is scheduled on a four (4) ten (10) hour day work week). The make-up work day shall be considered identical in start and stop times as the regular work day. If a make-up day is to be utilized the Employer shall notify the employees at the beginning of the week (Monday). It is agreed that any make-up day work will be made available to the job site employees first. Employer will not discharge or discriminate against any regular employee who declines to work on a make-up day. In no event shall the Employer attempt to circumvent the overtime provisions of this Agreement by employing supplemental labor for Saturday work.

**Section 7.** The Employer may elect to schedule work on four (4) ten (10) hour work days per work week. Changes in the work hours, other than those provided above, in special cases, may be made to meet special conditions upon application to the Local Union President/Financial Secretary.

**Section 8. Shift Work:** Where there are relay gangs of two or three shifts in twenty-four (24) successive hours, straight time shall be applicable, with the exception of Saturday, which shall be covered By Section 3 (overtime work) (Saturday) and all Sundays and holidays shall be paid at the rate of DOUBLE TIME. When two (2) shifts are engaged, the first shall work eight hours for eight hours pay (regular), and the second shall work seven hours for eight hours pay. When three shifts are engaged, the first shift shall work eight hours at regular pay, and the 2nd and 3rd shifts shall draw eight hours pay for seven hours work. No member will be allowed to work over eight hours in a twenty-four hour period unless he draws overtime after the first 8 hours work, as detailed in Section 3.

# ARTICLE XII
## PAY DAY

**A.** Employees shall not be made to suffer the loss of time occasioned by the erection or stocking of scaffolds or by moving from one job to another job, during work hours.

**B.** Employees shall be paid before quitting time on Friday of each week and should an employee not receive their pay on the designated pay day, at the specified time, no further work will be permitted, until all members are paid. Also, after regular work hours, overtime will be paid while waiting for pay on the job.

**C.** Pay day will be each week, with no more than five (5) days hold back.

**D.** It is further agreed that all employees covered by this Agreement, shall be furnished on pay day, a check stub, pay envelope or receipt listing the date, Employer's Name, deductions for social security, withheld taxes, and number of hours represented by the check, also gross and net amount due, plus any other deductions from wages, required by law.

11

OK9915

E. When an Employee is discharged, he shall be paid at once. When an Employee is told to report to work and is not put to work, he shall be paid two (2) hours show up time; however, if an employee has worked the previous day and is laid off in less than two (2) hours, the following morning, shall be paid for time worked only. (Weather conditions excepted in above cases). An employee that has worked the previous day and fails to show up the next morning and then reports for work on the third (3rd) day and is laid off, then he shall not be entitled to the two hours pay. When a member informs the Foreman or Employer by 8:00 a.m. that he wants his money in full, he will be paid in full by 4:30 p.m. that same day. If the check can't be brought to the job site, it must be available at the Employer's office.

F. The Foreman shall notify the men by 10:00 a.m. as to whether or not they are going to work, when weather conditions are questionable.

## ARTICLE XIII
## WORKING CONDITIONS

1. Employees will not be required to build walls over four feet eight inches (4'8") in height except where there is overhead obstructions.

2. Employees will not be required to reach over forty (40) inches above their feet for mortar and not over sixty (60) inches in height for other materials. A ladder shall be provided by the Employer for the convenience of employees to reach the place they are working whether above or below ground. A ladder will be provided for every on hundred (100) feet of horizontal scaffold and shall extend at least three (3) feet above floor or scaffold. It shall be securely tied to scaffold and remain in place as long as a member is working thereon.

3. Employees will not be required to reach down a distance more than approximately twelve (12) inches to veneer steel or concrete beams.

4. No scaffold board shall be used under the size of 2 x 10 inches. Three (3) 2 x 10 and 3/4 inch plywood or three (3) 4 x 4 and 3/4 inch plywood is permissible.

5. Mortar boards shall be blocked or set on stands at least sixteen (16) inches above scaffold floor.

6. SAWS: All masonry saws shall have belt and blade guards, and wet and dry saws shall be grounded in accordance with Safety requirements. On all wet saws the Employer shall furnish elbow length gloves and aprons.

7. Employees will be given a ten (10) minute break at mid-morning and another ten (10) minute break at mid-afternoon. The steward will help the Foreman to see that this section is strictly adhered to. The break shall be taken at or near the work place with refreshments being brought to the work area by the employee at the beginning of the work day. No one shall leave the work area during their break. In the event that breaks are being abused, the steward or Foreman shall notify the Local Union office to discontinue breaks on that one particular project.

OK9915

8. Where dry saws are operated inside or outside a building in a manner that the dust from it would be injurious to the health of the operator or other employees, a blower fan or dust collector or filtered dust mask shall be provided by the Employer.

9. The laying of blocks or units weighing over forty (40) pounds may be laid by employees working pairs.

10. A sanitary and suitable toilet shall be provided at all jobs by the Employer. On jobs where the plumbing is tied onto the city sewage, a commode with running water shall be provided or portable toilet.

11. Good, clean drinking water shall be provided at all times and served from a closed container. Ice shall be put into the water during warm weather. Sanitary drinking cups shall be furnished at all times.

12. There shall be no prescribed rule or order or limitation by either Bricklayer or Employer as to the amount or number of bricks, tile, block or any masonry material to be laid in any given time.

13. No employee shall put mortar on masonry wall except a member of this Union.

14. Straight walls shall be laid to a line, and on jobs where specifications require slushing the line is not considered laid out until slushing is finished.

15. When job conditions merit a tool shed, it shall be provided.

16. Any employer employing more than three (3) masons and doing work in this jurisdiction shall employ at least fifty (50) per cent members of this Local Union if local members are available.

17. In case of fire or theft on a job at any time the Employer shall not be responsible for the loss of mechanics tools and clothing lost by such fire or theft.

18. The men setting the twig must set twig while other bricklayers are striking and/or walling masonry.

19. The wages, hours and conditions of employment contained in the collective bargaining contracts of the Local Union, shall constitute its working rules and regulations.

20. Members will be provided with a face mask by the Employer when pouring insulation such as peralite, zonalite, etc.

21. Proper lighting will be provided, for members to see to do their work properly, at all times by the Employer.

22. Each member must report all violations of the working rules and regulations, of which he is aware to the steward on the job or to the Business Agent or to the Local's Business office.

OK9915

## ARTICLE XIV
## POINTING, CAULKING AND CLEANING

1. Caulking on the inside and outside of all openings in masonry walls including windows, doors, louvers, etc. This shall apply to only such caulking which is exposed to view on the interior and exterior of the masonry opening at its intersection with the door,, window, or other unit whether it be wood, metal, or plastic.

2. All caulking in connection with expansion and slip joints in masonry walls.

3. All caulking relative to cut stone, precast stone, precast panels.

4. All caulking in connection with masonry parapet walls, excluding flashing.

5. Caulking around all conduits, pipes and any other objects penetrating masonry walls.

6. All cork, styrofoam, foam glass, fiberglass, or any other substitute when applied with mortar, cement, mastic of any type pitch, tar or any material used to stick the insulation is to be the work of members of Bricklayers and Allied Crafts.

7. All marble and marble masons shall be covered by this Agreement.

8. All split brick over 1 1/4" in thickness shall be bricklayers work.

## ARTICLE XV
## SCAFFOLDING AND MECHANICAL DEVICES

1. All swinging scaffolds used for the laying of masonry shall have at least one half (1/2) inch cables, shall be at least four (4) feet wide and have proper guard rails. When overhead protection is required for safety, it shall be eight (8) feet maximum height above the scaffold platform, with not less than two (2) inch planking and shall not be under four (4) feet wide. The overhead protection shall be a part of the swinging scaffold. Any work being performed above the outrigging of the scaffold shall require additional protection by planking the outrigging, as far out as is possible.

2. Corner poles may be used on masonry over studs or veneering of existing materials. When irregular materials are used that might warrant the use of corner poles, permission must be granted by the Local Union.

3. No scaffold deck shall be farther away from the wall than approximately four (4) inches. Where projections or pilasters occur which would cause the scaffold to exceed four inches, the scaffold must be built around the obstructions.

4. In the use of scaffold, the manufacturers recommendations and safety requirements shall be followed. All of the above must meet OSHA regulations and OSHA regulations will govern.

14

OK99 15

## ARTICLE XVI
## THE DUTIES OF THE STEWARD ON THE JOB SITE

1. To inspect dues books, receipts for initiation fees and travel service dues.

2. To report violations of the working rules, Collective Bargaining Agreement, unsafe job conditions and other job site disputes to the Foreman or Superintendent, President/Financial Secretary if the condition or violation is not corrected or if the dispute is not promptly resolved.

3. To assist any injured member in receiving proper and immediate care.

4. To report to the President/Financial Secretary or Field Representatives any work assignments falling within the jurisdiction of this Local Union made to employees represented by another trade Union or Labor organization.

5. If the Steward is unable to promptly resolve a problem at the job site, he shall contact the President/Financial Secretary as soon as possible. He shall not have the authority to order a work stoppage or interruption in the work progress.

6. Any member who wishes the Union to process a grievance from him against an Employer, must present his grievance in writing to the President/Financial Secretary of the Local Union within seventy-two (72) hours of the time of the event about which he is complaining or as provided in the Local Union's Collective Bargaining Agreement.

7. In no case shall a Steward be discharged, laid off or fired because of the manner of performance of his duties as a Steward.

8. Stewards shall not be transferred from one job to another unless the President/Financial Secretary agrees to the transfer.


## ARTICLE XVII
## RESPONSIBILITY OF MEMBERSHIP

1. All members of other Local Unions affiliated with the Bricklayers and Allied Craftworkers International Union who are working within the jurisdiction of this Local Union must notify this Union of jobs on which they are employed.

15

OK9915

## ARTICLE XVIII
## REGULATING OF APPRENTICES

**A.** Apprentices shall be governed by the apprentice standards as approved by the Oklahoma State Trowel Trades Joint Apprenticeship Committee.

**B.** All employees must strike up and rake out their own work. The apprentice may perform this work, but in no case will he be permitted or required to rake out or strike up work done by other employees.

**C.** The Local Union upon the authority vested to it by the Oklahoma State Trowel Trades Joint Apprenticeship Committee shall have the authority to place apprentices on the jobs at the following ratio: first apprentice to one journeyman and thereafter, one apprentice to every one journeyman.

## ARTICLE XIV
## FOREMEN

**A.** The salary of the Foreman shall be an extra dollar per hour above scale for 1 to 5 bricklayers and one extra hours pay per day for six or more bricklayers.

**B.** On all jobs the Foreman shall be a Journeyman member of the International Union of Bricklayers and Allied Craftworkers and the same branch of Trade, as the members he is Foreman over.

**C.** On all jobs where two (2) or more members are working, one (1) must be designated as Foreman and receive Foremans pay.

**D.** The foreman must notify this Local Union's office a minimum of eight (8) hours prior to the commencement of a job, stating job location. Contractor's Name and Job Phone Number, on those jobs lasting over three (3) days' duration.

**E.** Foremen have the authority to make effective recommendations concerning hiring, discharging and exercising similar supervisory functions. No member working in the capacity of Foreman may violate, or cause, or attempt to cause any employee to violate any provision of the bargaining agreement or any provision of this constitution or the International Constitution.

OK9915

## ARTICLE XX
## GRIEVANCE PROCEDURE

**A.** The parties to this Agreement shall establish a Joint Arbitration Board consisting of two representatives selected by the Contractors and two representatives selected by the Local Union, to resolve disputes over the interpretation and application of this Agreement. The Board shall meet at least once a month, or on call, to settle complaints, abuses or grievances. It is further agreed that should occasion require any alterations or amendments to this Agreement, the party desiring such alterations or amendments shall submit same in writing to the Board. The Employer and Union representatives at a session shall have an equal number of votes on all matters coming before the Joint Arbitration Board, regardless of the number of Employer or Union representatives present at a session.

**B.** It is specifically agreed that any controversy arising out of this Agreement involving the interpretation of its terms and conditions, shall be settled in accordance with the grievance procedure set forth in this Article. No grievance shall be recognized unless it is called to the attention of the Employer by the Union or to the attention of the Union by the Employer within five (5) days after the alleged violation is committed or discovered.

**C.** Grievances shall be handled in the following manner:

    1.    The grievance shall be referred to the jobsite Union steward and to the foreman for adjustment.

    2.    If the grievance cannot be settled pursuant to paragraph 1 of this Section, the grievance shall be referred on the following day to the President/Financial Secretary of the Union and the Employer.

    3.    If the grievance cannot be settled pursuant to paragraph 2 of this Section with three (3) working days excluding weekends and holidays, the grievance shall be submitted within 48 hours to the Joint Arbitration Board for consideration and settlement.

    4.    If the Joint Arbitration Board cannot reach a satisfactory settlement within five (5) working days, not including weekends and holidays, following a referral of the grievance to the Board, it shall immediately select an impartial arbitrator to review with the Board all evidence submitted relating to the dispute and then cast the deciding vote. If the Joint Arbitration Board cannot agree on an impartial arbitrator, the impartial arbitrator shall be selected from a panel or arbitrators submitted by and in accordance with the rules and regulations of the Federal Mediation and Conciliation Service. All expenses of the impartial party shall be borne equally by the Employer and the Union. The decision reached by the Joint Arbitration Board with the assistance of the impartial arbitrator shall be final and binding upon all parties.

17

OK9915

D.   When a settlement has been reached at any step of this Grievance Procedure, such a settlement shall be final and binding on all parties, provides, however, that in order to encourage the resolution of disputes and grievances at Steps 1 and 2 of Section C of this Article, the parties agree that such settlements shall not be precedent-setting.

E.   The time limits specified in any step of the Grievance Procedure may be extended by mutual agreement of the parties initiated by the written request of one party to the other, at the appropriate step of the Grievance Procedure.  However, failure to process a grievance, or failure to respond within the time limits provided above, without a written request for an extension of time, shall be deemed a waiver of such grievance without prejudice, and shall create no precedent in the processing of and/or resolution of like or similar grievances or disputes.

# ARTICLE XXI
## SUBCONTRACTING

A.   The Employer agrees not to sublet, assign or transfer any work covered by this Agreement to be performed at the site of a construction project to any person, firm or corporation, except where the subcontractor subscribes and agrees in writing to be bound by the full terms of this Agreement and complies with all of the terms and conditions of this Agreement.

B.   All charges of violation of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedures for the handling of disputes and the final and binding arbitration of disputes.

# ARTICLE XXII
## PRESERVATION OF WORK (ANTI - DOUBLE BREASTING)

A.   In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows:  If and when the Employer shall perform any work of the type covered by this Agreement at the site of a construction project, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Employer (including its officers, directors, owners, partners or stockholders) exercises either directly or indirectly (such as through family members) any significant degree of ownership, management or control, the terms and conditions of this Agreement shall be applicable to all such work.

18

OK9915

**B.** All charges of violations of Section A of this Article shall be considered as a dispute under this Agreement and shall be processed in accordance with the procedures for the handling of grievances and the final binding resolution of disputes, as provided in Article XX of this Agreement. As a remedy for violations of this Section, the arbitrator (or arbitration body) provided for in Article XX is empowered, at the request of the Union, to require an Employer to (1) pay to affected employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such employees as result of the violations, and (2) pay into the affected joint trust funds established under this Agreement any delinquent contributions to such funds which have resulted from the violations, including such interest as may be prescribed by the trustees or by law. Provision for this remedy herein does not make such remedy the exclusive remedy available to the Union for violation of this Section; nor does it make the same or other remedies unavailable to the Union for violations of other sections or articles of this Agreement.

**C.** If, as a result of violation of this Article, it is necessary for the Union and/or the trustees of the joint trust funds to institute court action to enforce an aware rendered in accordance with Section B above, or to defend an action which seeks to vacate such aware, the Employer shall pay any accountants' and attorneys' fees incurred by the Union and/or the fund trustees, plus costs of the litigation, which have resulted from the bringing of such court action.

## ARTICLE XXIII
## NO - STRIKE/NO - LOCKOUT

It is understood and mutually agreed that there shall be no strikes or lockouts over a dispute concerning this Agreement during its term until the grievance procedures described in Article XX have been exhausted and then only in the event a party fails or refuses to abide by a final decision. This Article shall not apply in those cases where an Employer fails or refuses to make in whole or in part any payments required under this Agreement including all wages, local union fringe benefits or other contributions that have been established through bona fide collective bargaining.

## ARTICLE XXIV
## SEPARABILITY AND SAVINGS PROVISIONS

It is the intent of the parties hereto to abide by all applicable Federal and State statutes and rules, and regulations made pursuant thereto. If any provision of this Agreement is held invalid by any court or governmental agency having jurisdiction, or if compliance with or enforcement of any provision of this Agreement is restrained by such tribunal pending a final determination as to its validity, such provision or provisions shall continue in effect only to the extent permitted and all other provisions of this agreement shall remain in force and effect. In the event that any provision of this Agreement is held invalid, or enforcement of or compliance with any provision is restrained, the Union and the Employer shall enter into immediate Collective Bargaining Negotiations for the purpose of arriving at a mutually satisfactory replacement, incorporating the substance of such provision to the extent allowable under the law to be in effect during the period of invalidity or restraint.

19

OK99LS

## ARTICLE XXV
## SAFETY

### A.    SAFETY:

1.  The Union and the Employer agree that safety of the workplace is of paramount importance and the Employer and the Union agree to abide by all appropriate federal, state and local safety laws and regulations and any and all safety regulations established by an owner or his representative at a particular jobsite.

### B.    SAFETY AND HEALTH:

1.  The employer suggests, and the Union totally agrees, that as soon as practical a Joint Safety Committee shall be established to educate members in the following:  First aid as applicable to job site, safety in the work area, hazardous materials on masonry jobs, proper scaffold erection and safer work habits.

### C.    DRUG TESTING:

1.  In an effort to enhance the safety of the workplace, when urine testing is required by the Employer for drug, alcohol, or other substance impairment, the testing program shall be performed by recognized physicians and/or laboratories and shall comply with any and all Federal, State, and local standards.  the cost shall be borne by the Employer.

2.  When testing is required by the Employer, employees shall be paid for the time lost from work if testing is done during working hours, provided that the test provided that the results of the employee's tests are negative.  No time shall be paid to an employee whose test results are positive.

3.  The Employer shall indemnify and hold harmless the Union, its officers, agents, employees, and representatives from and against any and all loss, suits, actions, or claims of any character by any employee or group of employees covered under this agreement rising from the drug, alcohol, or substance impairment testing practices set forth in this addendum.  Except that the Employer shall not be held responsible in any manner for loss, suits, actions, or claims to the Employer, who are under the influence of drugs, alcohol, or other illegal substances.

OK9915

## ARTICLE XXVI
## GENERAL UNDERSTANDING

The Union agrees to cooperate with the Employer in meeting conditions peculiar to the job in which it may be engaged.  It will at all times meet and confer with the Employer, and similarly, the Employer will at all times meet with the Union respecting any questions of misunderstandings that may arise under the performance of this Agreement.

This Agreement constitutes the entire agreement between the parties, and any local or area practices or working rules which may be in conflict with the provisions contained in this Agreement shall be subordinated to this Agreement.

The Employer agrees that if it has not previously done so, it will, upon the Union's submission of evidence of majority status among its employees in the bargaining unit described herein, voluntarily recognize the Union as the exclusive representative as defined in Section 9 (a) of the National Labor Relations Act, as amended, of all employees within that bargaining unit on all present and future jobsites within the jurisdiction of the Union.  The Employer expressly agrees that it will not condition its recognition upon the results of an election conducted under the rules and regulations of the National Labor Relations Board.

21

JUN- 9-00 FRI 10:07 AM   BAC LOCAL #5                FAX NO.   4055280165              P. 7

RECEIVED JUL . . 2000

5-OK-6
1-AR-6
OK 9915

## ARTICLE IX
## WAGES/DUES CHECK-OFF
### OKLAHOMA/ARKANSAS
POINTER - CAULKER - CLEANER HOURLY RATES
EFFECTIVE JUNE 1, 1999 THRU MAY 31, 2002

### EFFECTIVE JUNE 1, 1999

|  |  | (TAXABLE DEDUCTIONS) |  |  | (NON-TAXABLE) FRINGE BENEFITS |  |  |
|  |  | DUES CHECKOFF |  |  |  |  |  |
| BASE WAGES | VAC | IU | LOCAL | PENSION | H&W | IMI | TOTAL PACKAGE |
|---|---|---|---|---|---|---|---|
| 17.06 | 1.00 | .21 | .32 | 1.50 | 1.95 | .24 | $20.75 |

### EFFECTIVE DECEMBER 1, 1999

|  |  | (TAXABLE DEDUCTIONS) |  |  | (NON-TAXABLE) FRINGE BENEFIT |  |  |
|  |  | DUES CHECKOFF |  |  |  |  |  |
| BASE WAGES | VAC | IU | LOCAL | PENSION | H&W | IMI | TOTAL PACKAGE |
|---|---|---|---|---|---|---|---|
| 17.31 | 1.00 | .21 | .32 | 1.50 | 1.95 | .24 | $21.00 |

### EFFECTIVE JUNE 1, 2000

|  |  | (TAXABLE DEDUCTIONS) |  |  | (NON-TAXABLE) FRINGE BENEFITS |  |  |
|  |  | DUES CHECKOFF |  |  |  |  |  |
| BASE WAGES | VAC | IU | LOCAL | PENSION | H&W | IMI | TOTAL PACKAGE |
|---|---|---|---|---|---|---|---|
| 17.81 | 1.00 | .22 | .33 | 1.50 | 1.95 / 2.05 | .24 | $21.50 |

### EFFECTIVE JUNE 1, 2001

|  |  | (TAXABLE DEDUCTIONS) |  |  | (NON-TAXABLE FRINGE BENEFITS |  |  |
|  |  | DUES CHECKOFF |  |  |  |  |  |
| BASE WAGES | VAC | IU | LOCAL | PENSION | H&W | IMI | TOTAL PACKAGE |
|---|---|---|---|---|---|---|---|
| WAGE OPENER | 1.00 | .22 | .33 | 1.50 | 1.95 / 2.20 | .24 | WAGE OPENER |

5    RECEIVED JUL 1 1 2000

We the undersigned Employer on behalf of the parent companies and/or corporations hereby become signatory to and conditions of this Agreement effective as of this date

ATKINS WEATHERPROOFING INC
296539 0005 OK 6

Signed this _20th_ day of _MARCH_ , 19 2002

FOR THE EMPLOYER

FOR BAC LOCAL 5 OKLAHOMA/ARKANSAS
NEGOTIATING COMMITTEE

_ATKINS WEATHERPROOFING, INC._
Name

_PRIINCE W._

_518 N. PRINCE LANE -_
Address

_SPRINGFIELD, MO. 65802_
City and State Zip Code

_417 - 869 - 1011_
Phone

By _VICE-PRES_
Name and Title

President/Financial Secretary
Int'l. Union of B.A.C.
Local Union No. 5 of
Oklahoma/Arkansas

19